

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 29, 2021

**By ECF**

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. Robert Adams*, S1 20 Cr. 494 (PGG)

Dear Judge Gardephe:

      The Government respectfully submits this letter requesting pre-trial rulings on the admissibility of certain Government exhibits. These exhibits form a key part of the Government's proof on the core, disputed element of the bribery and blackmail charges: whether the defendant demanded, sought, and received a thing of value *in return for* being influenced in the performance of an official act.

      Specifically, the Government seeks to introduce: (1) Government Exhibit 407, a screenshot of a press release of a bribery prosecution involving a correctional officer that Visitor-1 saved on her phone a day-and-a-half after she had sex with the defendant because, as she is expected to testify, she believed the incident was an act of bribery; and (2) Government Exhibit 410, in which Visitor-1 sends a text message to a friend on July 8, 2019, saying that she had sex with the defendant because he had "bribed" her. The Government previously moved to admit these and other materials from Visitor-1's phone. The defendant did not oppose the admission of the evidence at the time, but the Court reserved decision, noting that it was not clear that the materials were relevant to disputed issues in the case.[1]

      For the reasons set forth below, evidence of Visitor-1's state of mind is relevant to, and circumstantial evidence of, the defendant's state of mind when he took her to a motel to have sex with her. Visitor-1 was one party in a two-party encounter, and her belief that she had been subject

---

[1] The Government had previously moved to introduce additional materials as relevant state-of-mind evidence or prior consistent statements, including Visitor-1's search history following the July 5, 2019 incident; certain screenshots she shared as a result of those searches; and her text messages with another friend about her conversations with the defendant on July 26, 2019. The Government is not seeking to introduce those exhibits at this time, but reserves its right to do so should the defendant attacks Visitor-1's credibility, which would make them admissible as prior consistent statements.

to bribery tends to show that the defendant, too, sought and received a thing of value from Visitor-1. In addition, both exhibits may be admissible to rebut the defendant's attacks on Visitor-1's credibility. Government Exhibit 410, in particular, is admissible as Visitor-1's prior consistent statement, and will be necessary to rebut the defendant's charge—outlined in his briefing and expected to be a significant defense theme at trial—that Visitor-1 fabricated her expected testimony that the defendant demanded and received sex as part of a *quid pro quo*.

## I. Relevant Background

One of the core disputed issues at trial, if not the central disputed issue, will be whether the defendant and Visitor-1 had sex as a result of bribery and blackmail, or for some lawful reason. As the parties' submissions have made clear, there is no dispute that, on July 5, 2019, Visitor-1 went to the MCC and gave contraband to Keith Outlaw; that the defendant caught Outlaw with the contraband, confronted Visitor-1, and told her to go to a nearby pizzeria; that the defendant did not write a report about Visitor-1's smuggling or alert his supervisors that Visitor-1 had brought in contraband; and that, on the evening of July 5, 2019, the defendant and Visitor-1 had sex at a motel. *See* Dkt. 40, at 2-3. The defendant's recent pretrial submissions, however, make abundantly clear that he does contest Visitor-1's account of the *quid pro quo*—whether the sex was in exchange for the defendant's non-performance of his official duties. *See*, *e.g.*, Dkt. 38, Def. Motions in Limine, at 4-5 ("The defense should be permitted to explore Visitor-1's motivations for having sex with Mr. Adams, particularly motivations that undermine the allegation in the Indictment that she was coerced."); *Id.* at 6 ("questioning Visitor-1 on [her requests for money to other men] is highly relevant to the credibility of her accusation that Mr. Adams coerced her into having sex."); Dkt. 40, Def. Response to Gov't Motions in Limine, at 6 ("Thus, it is reasonable to infer that the likelihood of being required to perform a back-to-back shift was the motivation for Mr. Adams' failure to report the contraband, as opposed to an alleged *quid pro quo* with Visitor-1"); Dkt. 48, Def. Letter Response in Support of Its Supplemental Motions in Limine, at 1 (certain text messages should be admitted because they "surely shed[] light on the government's allegation that coercion was the basis for the parties' relationship.").

Indeed, the defendant's October 26, 2021 motion *in limine* strenuously argued that the entirety of the text messages between Visitor-1 and the defendant should be admitted to show their relationship supposedly was marked by romance and personal affection, rather than one spawned by blackmail and bribery. The defendant's submissions to date further make clear his belief that Visitor-1's motivation to fabricate the *quid pro quo* arose as early as August 7, 2019, when another officer searched Outlaw and became suspicious that Visitor-1 might be attempting to smuggle contraband into the MCC. *See* Dkt. 46, Def. October 26, 2021 Motions in Limine, at 7. The two exhibits that the Government seeks to introduce are directly relevant to the issue of Visitor-1's intent, motivation, and reason for having sex with the defendant.

Government Exhibit 407 is a screenshot from one of Visitor-1's phones of a press release of a federal prosecution titled, "Correctional Officer Arrested For Accepting a Bribe to Smuggle Cellphones Into the Metropolitan Correctional Center." Visitor-1 is expected to testify that, after she had sex with the defendant, she went on the internet to search for information on the consequences for bribery. She did so because, in Visitor-1's mind, the defendant's demand that she have sex with him in exchange for not getting her into trouble was bribery. Visitor-1 is

expected to testify that she came across the press release on the internet and saved it on her phone, and her phone extraction establishes that she saved it on July 7, 2019 at 12:37 p.m., less than two days after the defendant demanded and received sex from her in exchange for not getting her in trouble and allowing her to continue visiting the MCC.  She would further testify that the press release did not discuss a case identical to her circumstances, because the exchange described in the press release she saved did not involve the demand and receipt of sex in exchange for not getting into trouble, but she nonetheless saved it because it involved a correctional officer engaging in bribery.

Government Exhibit 410 is a July 8, 2019 text message exchange between Visitor-1 and a friend, in which Visitor-1 used the word "bribe" to describe her encounter with the defendant.  In that exchange, Visitor-1 told her friend that she was about to "got to [a] clinic" because "some[thing] weird happened to me" and a "n* took the condom off."  Visitor-1 is expected to testify that she was referring to going to a women's health clinic for testing because the defendant had removed the condom he was wearing while he was having sex with Visitor-1.  In response, Visitor-1's friend said, "wat u mean 'something weird' he took the pussy?"  Visitor-1 replied, "nawh bribed me.  Then pulled the condom off the last 20 seconds."  Visitor-1 is expected to testify that "bribed me" is a reference to the fact that Visitor-1's sex with the defendant was a result of bribery.  Visitor-1's friend then asked who had done this to Visitor-1, and Visitor-1 replied, "he a officer. . .Federal officer."  Visitor-1 is expected to testify that she was referring to the defendant.

## II.  Applicable Law

Direct evidence is "not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 941, 942 (2d Cir. 1997).  Rather,"[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *Id.*  In bribery and extortion prosecutions, courts have recognized that the state-of-mind of the bribee/victim of extortion is relevant.  *See, e.g.*, Ex. A., *United States v. Skelos*, 15 Cr. 317 (KMW), ECF No. 89, Transcript of November 9, 2015 Conference, at 29-38, 42-44 (S.D.N.Y. 2015) (admitting statements of bribe payors/extortion victims about their state of mind with respect to the bribery/extortion); Ex. B., *United States v. Silver*, 15 Cr. 93 (VEC), Transcript of October 16, 2015 Conference ("Silver Tr."), at 83 (S.D.N.Y. 2015) (same); *United States v. Slavin*, No. 89 Cr. 310, 1990 WL 71479, at *2 (S.D.N.Y. May 23, 1990), *aff'd*, 923 F.2d 844 (2d Cir. 1990) (victim's state of mind in an extortion case was relevant as to whether the "threat was communicated"); *United States v. Kelly*, 722 F.2d 873, 878 (1st Cir. 1983) (statements of extortion victims admissible to show "what these people thought about why they were doing things"); s*ee also United States v. Tuchow*, 768 F.2d 855, 865-66 (7th Cir. 1985); *United States v. Adcock*, 558 F.2d 397, 401, 404 (8th Cir. 1977).

A witness's prior consistent statements are not hearsay and are admissible for their truth if the witness's credibility is attacked by the defense on any ground.  *See* Fed. R. Evid. 801(d)(1)(B) (defining as "not hearsay" any statement that "is consistent with the declarant's testimony and is offered: (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground"); *see also United States v. Purcell*, 967 F.3d 159, 195-97 (2d Cir. 2020) ("Rule 801(d)(1)(B) was amended in 2014 to include subsection

(ii), which expands the purposes for which prior consistent statements may be offered."). "Prior consistent statements that are admissible under Rule 801(d)(1)(B) are substantive evidence." *United States v. Caracappa*, 614 F.3d 30, 40-41 (2d Cir. 2010) (internal citations and quotation marks omitted). Furthermore, "a prior consistent statement need not be identical in every detail to the declarant's [] testimony at trial" to be admissible under Rule 801(d)(1)(B). *United States v. Vest*, 842 F.2d 1319, 1329 (1st Cir. 1988).

## III. Discussion

### 1. Government Exhibit 407

Government Exhibit 407 is admissible because it is probative of Visitor-1's state of mind, which in turn is relevant to the defendant's state of mind and the existence of the *quid pro quo*.

Government Exhibit 407, a screenshot of a press release, is relevant, non-hearsay evidence of Visitor-1's state of mind. The Government is offering the exhibit not for the truth of any matters asserted therein, but to establish that shortly after having sex with the defendant, Visitor-1 ran internet searches related to bribery and saved information that she found. Her testimony about conducting those searches, and the result of one of those searches in the form of a press release, is highly relevant to her mental state in the aftermath of her encounter with the defendant. It is also circumstantial evidence of the defendant's state of mind.

In this regard, Judge Caproni's decision in *Silver* admitting as relevant evidence the bribe payor's state of mind as to the existence of a *quid pro quo* is particularly instructive. Judge Caproni reasoned that out-of-court statements evincing a bribe payor's state of mind are "circumstantial evidence that a relationship is a quid pro quo relationship" because "if one of the persons in the relationship believes that when he asks for a quid, he's going to be asked in return for a quo . . . it's direct evidence about at least one party's understanding of the relationship," and "it is unusual in terms of common sense and human nature that one person in a relationship believes they are in a quid pro quo relationship and the other party does not." Silver Tr. 83. The same is true here: the press release Visitor-1 saved to her phone about a bribery prosecution, which reflects her mental state that her encounter with the defendant was an act of bribery, is circumstantial evidence that the relationship between her and the defendant is a *quid pro quo* relationship. Accordingly, it is circumstantial evidence of the defendant's state of mind and the existence of the *quid pro quo*.

Even if the internet search testimony and related screenshot were not admissible as state-of-mind evidence, they are relevant to rebutting the defendant's claim that Visitor-1 fabricated her expected testimony that she engaged in a *quid pro quo* with the defendant. Indeed, citing the text message exchanges between the defendant and Visitor-1 in the aftermath of their encounter, the defendant has already indicated that he intends to argue that his relationship with Visitor-1 was marked by romance and personal affection. Defense counsel has made clear that they intend to argue that sometime after August 7, 2019, Visitor-1 purportedly plotted to frame the defendant and fabricate a story about bribery. The existence of documentary evidence prior to August 7 that Visitor-1 believed there had been a bribe is therefore also directly relevant to rebutting the defendant's claim. Visitor-1's internet searching around the same time is evidence directly

contrary to those assertions, and excluding it would give the jury a misleading impression about Visitor-1's then-existing mental state.

Admission of Government Exhibit 407 is not barred by Rule 403. "Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (internal citation omitted). The press release is not being offered for its truth, and nothing about the evidence is unfairly prejudicial to the defendant. Moreover, to address any concerns about unfair prejudice the Court may have about this exhibit, the Government will redact it to include only the title of the press release and general description of the charges. Those portions of the release are not unfairly prejudicial, because they speak only of the fact that a correctional officer was charged (not convicted) with the bribery in connection with a smuggling scheme. Furthermore, the Government is amenable to an appropriate limiting instruction.

### 2. Government Exhibit 410

Like Government Exhibit 407, Government Exhibit 410 is admissible because it is probative of the parties' state of mind as to the existence of the *quid pro quo*. And if the defendant attacks Visitor-1's credibility, it will also be admissible as a prior consistent statement to rehabilitate her credibility.

Government Exhibit 410, which contained Visitor-1's texts to her friend that the defendant "bribed" her, are equally probative of Vistor-1's then-existing mental state. It shows that one party to the relationship believed that there was an exchange. It is therefore circumstantial evidence of the defendant's state of mind, because one party in a two-party exchange believed it to be a *quid pro quo*. *See* Silver Tr. 83.

To be sure, and as the Court previously noted, Visitor-1's lay usage and understanding of the word "bribe" is mistaken in terms of the directionality of the bribe. From a legal standpoint, technically she was doing the bribing, and was not bribed.[2] Even so, the message is being offered as evidence of her state-of-mind. Visitor-1 is not lawyer, nor does she possess any legal training regarding bribery laws; moreover, despite her mistaken description of the direction of the bribe, her statement clearly evinces a layperson's understanding that there was an exchange in which she

---

[2] In reserving on the admission of Government Exhibit 410, the Court noted that the "government's theory is that the defendant coerced Visitor-1 into having sex, not that he bribed her into having sex." Transcript of Oct. 27, 2019 Final Pretrial Conference, at 7. For the avoidance of doubt, the Government's theory encompasses both concepts. The Government's bribery theory, which is charged in Count One, is premised on the defendant's demand and receipt of sex from Visitor-1 in exchange for not reporting her and allowing her to continue to visit the MCC. The Government's coercion theory, which is charged in Count Two, is premised on the threat embedded in the bribe, *i.e.*, that the defendant could and would report her if she did not comply with his demands. The Government agrees with the Court that its theory is not that the defendant offered the bribe, because he is the one who received the thing of value and undertook an official act, not the other way around. Nonetheless, for the reasons stated herein, Visitor-1's belief that a bribe was involved is highly relevant and probative of her state of mind.

was induced to provide something that she otherwise would not have. As such, the statement is clear evidence that Victim-1 believed at the time that there had been an exchange.

Indeed, as Visitor-1 will testify, and as she told her friend just days after Visitor-1's encounter with the defendant, she viewed the defendant's demand for sex from her in exchange for not reporting as the defendant bribing her. Therefore, as was the case with Government Exhibit 407, this exhibit is "direct evidence about at least one party's understanding of the relationship" and should be admitted at trial both because it is highly probative of a central issue, and because its inclusion is necessary to prevent the jury from being presented a misleading picture of the parties' relationship.

Moreover, even if Government Exhibit 410 were not admissible as direct evidence, it will be independently admissible as a prior consistent statement once the defendant attacks Visitor-1's credibility. The defendant clearly intends to argue that Visitor-1's is lying about the existence of the *quid pro quo*, threats and coercion by the defendant that preceded their sexual encounter. Once he does so—whether in opening statements or on cross-examination—the prior consistent statements in Government Exhibit 410 will be admissible under both prongs of Rule 801(d)(1)(B): (1) because this statement was made long before any alleged motivate to fabricate her testimony arose, it will be admissible under the first prong to rebut such charge; and (2) it will be admissible under the second prong to rehabilitate her credibility.

\* \* \*

Because each of these exhibits is highly probative on the central issue of intent, the Court should admit them. *See United States v. Montsalvage*, 850 F.3d 483, 498 (2d Cir. 2017) ("This Court has in the past declined to second-guess a district court's admission of relevant video or media evidence where the evidence bears an identifiable connection to an issue or defendant in the case."); *United States v. Ansaldi*, 372 F.3d 118, 131 (2d Cir. 2004) (FDA paper properly admitted, despite possible prejudicial effect, as "key element of the prosecution's case" on issue of intent). While neither exhibit is unfairly prejudicial—indeed, the defendant did not object to their admission before the Court's questions about relevance, and had independently marked the press

release as its own defense exhibit—any risk of unfair prejudice can easily be cured through redactions to the press release or a limiting instruction.

Accordingly, Government Exhibits 407 and 410 should be admitted.

> Respectfully submitted,
>
> DAMIAN WILLIAMS
> United States Attorney
> Southern District of New York
>
> By: _____/s/_____
> Rushmi Bhaskaran
> Jarrod L. Schaeffer
> Nicolas Roos
> Assistant United States Attorneys
> (212) 637-2439 / -2270 / -2421

cc: Counsel of Record (by ECF)