Court Conference 10 16 2015.txt

```
                                                                  1
     FAGYSILC
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    UNITED STATES OF AMERICA,
3
4              v.                          15 CR. 0093 (VEC)
4
5    SHELDON SILVER,
5
6                    Defendant.
6
7    ------------------------------x
7
8                                           New York, N.Y.
8                                           October 16, 2015
9                                           2:30 p.m.
9
10
10   Before:
11
11                  HON. VALERIE E. CAPRONI,
12
12                                           District Judge
13
13
14                       APPEARANCES
14
15   PREET BHARARA
15        United States Attorney for the
16        Southern District of New York
16   CARRIE COHEN
17   HOWARD S. MASTER
17   ANDREW DANIEL GOLDSTEIN
18   JAMES M. MC DONALD
18        Assistant United States Attorney
19
19   STROOCK & STROOCK & LAVAN LLP
20        Attorneys for Defendant
20   BY:  JOEL COHEN
21
21   MOLOLAMKEN, LLP
22   BY:  JUSTIN VAUN SHUR
22   STEVEN FRANCIS MOLO
23   ROBERT KELSEY KRY
23
24
25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                  2
1          (Case called)
2          THE COURT:  Good afternoon.  Please be seated.
3          The order that we're going to go in today is we're
4    going to start with the motions in limine.  Then we're going to
5    talk about the defendant's that I received this morning or last
6    night, one or other, a request for a witness list, among other
7    things.  Then we'll take up the sealed motion in limine.
8          Gentlemen of the press, heads up.  You'll be excluded
9    for that when I make findings on the record.
                                Page 1
```

```
                     Court Conference 10 16 2015.txt
16   statements, not actual statements.  That's not enough
17   information to be included with the rest of the issue.
18             THE COURT:  What can you tell me?
19             MR. GOLDBERG:  I think, your Honor, that number one,
20   we could endeavor to be more specific, to the extent that the
21   defense needs it.  Some of these are issues where we thought it
22   was important in this motion to lay out the law for the Court
23   on state of mind evidence so that when these issues come up at
24   trial, that there's a background, in terms of the briefing.
25             To the extent that there is a statement that we intend
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                     81

 1   to elicit as we get to a particular witness, that we could flag
 2   that for the Court in advance of that witness's testimony.
 3             It could be addressed in the specifics then as opposed
 4   to potentially at the time that we filed this when we were
 5   beginning to put our proof together.
 6             THE COURT:  You're now two weeks before trial.  So I
 7   presume your proof is more together.
 8             MR. GOLDBERG:  It is, your Honor.
 9             THE COURT:  It's not entirely together.  Can you flesh
10   out, I think, particularly the information that you want
11   relative to Glenwood.  Because I would prefer not to be ruling
12   on that in trial.
13             I presume you would want to know for purposes of prep
14   and they want to know for purposes of cross whether it's coming
15   in or not.  So flesh that out.
16             MR. GOLDBERG:  We can do that, your Honor.
17             THE COURT:  I think also the information about the
18   doctor disproving of Weitz & Luxenberg and the contributions --
19   if you could please flesh that out including is it documents,
20   is it testimony, etc.  That would be useful.
21             MR. GOLDBERG:  We will, your Honor.
22             THE COURT:  That's due on Monday.  Your response is
23   due Tuesday.  We'll talk about it Wednesday.
24             MR. GOLDBERG:  Thank you, your Honor.
25             THE COURT:  Miles for Meso.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                     82

 1             MR. KRY:  Right.  On the two documents that are
 2   actually identified, your Honor, the point here, as you alluded
 3   to back in the beginning of the hearing on campaign
 4   contributions, at the end of the day, it's Mr. Silver's mental
 5   state that counts, not the alleged victims that the government
 6   is pointing to here.
 7             Then the law for extortion.  They claim that it's the
 8   victim's mental state that counts, not quite.  The standard for
 9   McDonough is that "The government must prove beyond a
10   reasonable doubt that the victims were motivated to make
11   payments as a result of the defendant's control or influence
12   over public officials and that the defendant was aware of this
13   motivation."
14             So a third party's undisclosed subjective speculation
15   about whether it will cost me if he does something, absent any
16   evidence actually tying that motivation to Mr. Silver and
17   showing that Mr. Silver was somehow aware of that motivation,
18   which is what the McDonough requires -- that evidence just
19   isn't relevant.
20             So this is another topic where they have a basic
                                   Page 38
```

```
                        Court Conference 10 16 2015.txt
21      foundation problem.  They want to get in third parties' states
22      of mind, but that evidence is only relevant if they can tie
23      that to the defendant's awareness of that state of mind.
24              It's improper and very prejudicial to allow them to
25      put in that third party's state of mind and then just let the
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
                                                                            83

 1      jury speculate about whether the defendant knew that or not.
 2              There's an inherent risk with this type of evidence,
 3      your Honor, that the jury is going to assume that if Mr. Taub
 4      wrote an email saying, well, this is going to cost me, then
 5      whatever that says about Dr. Taub's speculation, a jury is
 6      going to be mislead into thinking that Mr. Silver must have had
 7      the same understanding of the relationship, and that's just not
 8      the law.
 9              THE COURT:  It seems to me that it is circumstantial
10      evidence that a relationship is a quid pro quo relationship if
11      one of the persons in the relationship believes that when he
12      asks for a quid, he's going to be asked in return for a quo.
13              That is circumstantial evidence of what's in his state
14      of mind because it's direct evidence about at least one party's
15      understanding of the relationship.  It is unusual in terms of
16      common sense and human nature that one person in a relationship
17      believes they are in a quid pro quo relationship and the other
18      party does not.
19              MR. KRY:  The element under the law though,
20      your Honor, is that it's not just his -- the third party's
21      mental state that matters.  It's the third party's mental state
22      that the defendant was aware of.
23              THE COURT:  Right.
24              MR. KRY:  So I don't think it's circumstantial
25      evidence, direct evidence, any kind of evidence.
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
                                                                            84

 1              THE COURT:  But it is circumstantial evidence that the
 2      relationship was a quid pro quo relationship, which is part of
 3      what they have to prove, that it was a quid pro quo
 4      relationship.
 5              MR. KRY:  One party's speculation, unless there is
 6      some actual basis for the speculation and some reason.
 7              THE COURT:  He's going to testify for days I suspect
 8      about why he believed this was a quid pro quo relationship.
 9      Taub is a witness.
10              MR. KRY:  Yes.  If the government had that evidence,
11      presumably they would have told us what that is.  If there's
12      evidence where this Miles for Meso email was sent on to
13      Mr. Silver --
14              THE COURT:  No, no, no.  They don't have to have that.
15      They're going to have testimony that it was a quid pro quo
16      relationship; that Taub referred patients and Silver gave
17      money.
18              That's what Taub is going to testify to; right?
19              MS. COHEN:  That's correct, your Honor, and other
20      benefits.
21              THE COURT:  And other benefits.  That establishes the
22      fact that it was a quid pro quo relationship, and Taub's email
23      is further evidence that not just on the stand but three years
24      or four years or whenever it was ago, he was saying, this is a
25      quid pro quo relationship.  Every piece of evidence doesn't
                                    Page 39
```

```
 1    have to prove every fact that they have to prove.
 2              MR. KRY:  And I don't disagree with that, your Honor.
 3    But every piece of evidence does have to be relevant to the
 4    case.  Under McDonough, a third party speculation just isn't
 5    relevant.
 6              There are any number of reasons why Taub could have
 7    said that.  He could have been promoting himself to the person
 8    he was corresponding with.
 9              There are any number of reasons why Dr. Taub may have
10    had that perception of the relationship.  Absent some evidence
11    actually tying that knowledge to Mr. Silver, under McDonough,
12    the Second Circuit standard is totally clear that that's not
13    relevant.
14              It's not a situation where you have different elements
15    of the crime and the government can prove them one at a time.
16    You have an element of the crime that under binding Second
17    Circuit law just isn't relevant to the case unless the
18    defendant is aware of it.
19              THE COURT:  You're making it sound like he has to be
20    aware that Dr. Taub thought that, as to Miles for Meso, he was
21    going to ask for something in return.
22              MR. KRY:  I think that's fair, your Honor.  If they're
23    putting in this Miles for Meso email to show that Dr. Taub
24    believed it was going to cost him, they can only put that in if
25    there's some evidentiary basis that Mr. Silver knew that
```

```
 1    Dr. Taub thought it was going to cost him, because absent that
 2    connection, this is pure speculation.
 3              It's one third party's subjective belief of the
 4    situation.  There's no basis for tying this in to Mr. Silver.
 5    As we said in the brief, Mr. Silver can't be convicted because
 6    of somebody else's guilty conscience.
 7              THE COURT:  That is absolutely correct.
 8              MR. KRY:  If we accept that premise, I think we are
 9    quite far on the way to excluding this evidence because that is
10    what it goes to.
11              THE COURT:  I completely disagree.  The fact that he
12    believes -- and the evidence is compelling evidence that he
13    understood this to be a quid pro quo relationship.
14              Assuming they can otherwise prove that there was a
15    quid pro quo relationship, then whether Mr. Silver knew that as
16    to this particular act Mr. Taub was saying this is going to
17    cost me, is neither here nor there.
18              MR. KRY:  Absent evidence tying the Miles for Meso
19    emails to Mr. Silver, I don't know how you would know that
20    those were part of any quid pro quo relationships.
21              THE COURT:  That's what Taub is going to testify.
22              MR. KRY:  If Dr. Taub testifies that Mr. Silver had
23    some reason to be aware of the motivation for thinking this is
24    going to cost me?
25              THE COURT:  No.  You're tying this evidence up in a
```

```
 1    way, one, that it is not how people operate, certainly not how
```

```
                    Court Conference 10 16 2015.txt
 2    quid pro quo relationships operate.  That's not what the law
 3    is.  It's circumstantial evidence that the men had a quid pro
 4    quo relationship.
 5             So, when he asked for something, he was asking for
 6    him, for the defendant, to act in his official capacity, to
 7    help him out on things.  He totally understood that he would do
 8    it, but it would cost me, because it's a quid pro quo
 9    relationship.
10             MR. KRY:  I don't think it makes sense to define quid
11    pro quo relationships in the abstract.  If the theory is that
12    there was a quid pro quo relationship with respect to Miles for
13    Meso, then they need to show that there was not only a
14    subjective belief by Dr. Taub that this was going to cost him
15    but that somehow Mr. Silver was aware of that motivation.
16             That's what McDonough says.  That's the government's
17    case.  We all agree that's what the standard is.  If they want
18    to try and put on evidence of some other transactions which
19    they say are quid pro quos that somehow justifies letting in
20    these completely different set of emails about Miles for Meso
21    just because Dr. Taub had an email.  Absence of evidence that
22    Mr. Silver was aware of Dr. Taub's understanding and
23    subjective, undisclosed perception of what he was doing here --
24    this evidence just isn't relevant under McDonough, and it's
25    also highly prejudicial.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                     88

 1             THE COURT:  I disagree with your reading of McDonough.
 2    So that email is admissible.  We need more on this one before
 3    we can resolve the other elements of it.
 4             We've talked about what I have as number 7, which is
 5    the use of letterheads for real estate taxes.  I think the
 6    motion relative to the Hofstra Law School opinion is moot?
 7             MS. COHEN:  Your Honor, I haven't been given expert
 8    disclosure.  So I'm not sure.
 9             THE COURT:  So you think they might be wanting to call
10    some other expert to testify to the same thing?
11             MS. COHEN:  You had asked them to notify us by today,
12    and they have not done so.
13             THE COURT:  I presume that means they don't have any
14    experts.
15             MR. MOLO:  Actually, Judge, you didn't ask us to
16    notify them by today.
17             THE COURT:  As soon as possible I think.
18             MR. MOLO:  Exactly.  We've written them telling them
19    that by the time of the pretrial conference, we intend -- it's
20    our intention now -- to give them expert disclosure.
21             THE COURT:  Are you going to try to put on a witness
22    who is going to testify about whether Weitz & Luxenberg's
23    arrangement was ethical?
24             MR. MOLO:  At this point in time, that is not my
25    intention.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                     89

 1             THE COURT:  Good.  Let me know if that changes because
 2    I do not believe I would admit it.
 3             You want to put in 40-year-old conduct of Dr. I.
 4             MR. MOLO:  Not exactly.  My partner, Mr. Shur.
 5             MR. SHUR:  Good afternoon, Judge.  I believe it's the
 6    government's motion, but I'm happy to address it.
                                 Page 41
```