```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                           20 Cr. 494 (PGG)

ROBERT ADAMS,

                 Defendant.              Pretrial Conference
------------------------------x

                                         New York, N.Y.
                                         October 27, 2021
                                         9:46 a.m.

Before:

                HON. PAUL G. GARDEPHE,

                                         District Judge


                      APPEARANCES

A. DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  JARROD L. SCHAEFFER, ESQ.
     RUSHMI BHASKARAN, ESQ.
     NICOLAS T. LANDSMAN-ROOS, ESQ.
     Assistant United States Attorneys

SAMUEL GREGORY, ESQ.
     Attorney for Defendant

TAYLOR & COHEN LLP
     Attorneys for Defendant
BY:  ZACHARY S. TAYLOR, ESQ.
```

```
 1                (Case called)
 2                THE DEPUTY CLERK:  Counsel for the government, please
 3     state your appearances.
 4                MR. SCHAEFFER:  Good morning, your Honor.  Jarrod
 5     Schaeffer, Rushmi Bhaskaran for the government.
 6                THE DEPUTY CLERK:  Counsel for the defendant, please
 7     state your appearances.
 8                MR. GREGORY:  Samuel Gregory and Zachary Taylor for
 9     Mr. Adams.  Good morning, your Honor.
10                THE COURT:  Good morning.
11                I received a letter yesterday from defense counsel on
12     this issue of certain text messages that defense wishes to
13     introduce between Mr. Adams and an individual the government
14     refers to as Visitor-1.  And the letter is a motion in limine
15     with respect to these text messages.  It's Docket No. 46.
16                I have some comments about the letter.  I haven't
17     received the government's letter yet -- they have until 5:00
18     today to submit a letter -- but the letter submitted by the
19     defense doesn't contain the legal analysis that I believe is
20     necessary, so I wanted to make some comments at this point to
21     focus the lawyers' attention on the matters that I think are
22     relevant.
23                So defense counsel cites various hearsay exceptions,
24     such as present sense impression and then-existing statement of
25     mental or emotional condition.  But the issue really with
```

respect to introduction of the text messages turns on a different legal principle. It doesn't turn on application of the hearsay rules. And that's because the basis for admitting the text messages, to the extent they're offered by the defense, would be state of mind.

From my perspective, there are two relevant legal issues. The first I suggested to the parties on Monday, and that is whether the text messages proffered by the defense are admissible under the Rule of Completeness set forth in Federal Rule of Evidence 106. In other words, is admission of the text messages proffered by the defense necessary to avoid a misleading impression created by admission of the text messages offered by the government? That requires an analysis of the text messages proffered by the government, what those text messages suggest, and how the text messages proffered by the defense are necessary to avoid misleading the jury. That analysis to date has not been done.

The second legal issue that the parties should focus on is relevance. What matters here is Mr. Adams's state of mind. He's the person on trial. And the jury will be asked to determine his state of mind -- that is, whether he intended to, and did, solicit a bribe, and whether he intended to, and did, demand and receive a thing of value -- that is, sex with Visitor-1 -- in exchange for not reporting Visitor-1's misconduct in bringing contraband into the MCC. Accordingly,

1  the text messages are arguably admissible to the extent they
2  shed light on Mr. Adams's state of mind with respect to these
3  issues.  To the extent that they do not shed light on
4  Mr. Adams's state of mind with respect to these issues, they
5  appear irrelevant.  Defense counsel's letter does not analyze
6  whether the text messages shed light on Mr. Adams's state of
7  mind with respect to the critical issues in this case.
8  　　　　To the extent that defense counsel contends in their
9  October 26, 2021 letter that certain materials -- such as an
10  August 14, 2019 video and an August 14, 2019 text message
11  between Visitor-1 and someone the defense refers to as a
12  co-conspirator -- to the extent that defense suggests that
13  these materials go to Visitor-1's credibility, I will likely
14  have to hear her testimony before deciding whether the material
15  is admissible.  Ordinarily such material is not admissible
16  where the witness admits on the stand the statements that
17  counsel contends undermines the witness's credibility.  I, of
18  course, have no idea what Visitor-1 will say with respect to
19  the matters set forth in the August 14th text message or the
20  statement she makes on the video, or, frankly, any other
21  aspects of her testimony.
22  　　　　In their letter, defense counsel also adopts my
23  analysis concerning Government Exhibits 402-405, 407-408, and
24  410-411.  As I ruled on Monday, those exhibits are not
25  currently admissible absent additional argument from the

1     government demonstrating their relevance.
2              I am going to schedule a conference in this case for
3     tomorrow at 3:00 to discuss the text messages proffered by the
4     defense in their October 26th letter, and my hope is that we
5     can resolve issues with respect to their admissibility at that
6     3:00 conference tomorrow.
7              So I look forward to receiving the government's letter
8     by 5:00 today.  And of course, if defense counsel wishes to
9     make an additional submission, that's up to them.
10             All right.  Are there other issues the lawyers want to
11    bring up now?
12             MR. SCHAEFFER:  Nothing from the government at this
13    time, your Honor.
14             MR. GREGORY:  No, your Honor.
15             THE COURT:  All right.  So we are awaiting notice from
16    the jury clerk that the panel is ready for us in the jury
17    assembly room across the street.  Once we get over there, I
18    will make some brief introductory remarks, which are largely
19    already set forth in the jury questionnaire itself, but I
20    repeat much of what is in the questionnaire just to focus the
21    jury's attention, for example, on the mechanics of filling out
22    the questionnaire, the fact that they need to use pens that
23    have black ink, etc., etc.  So once they complete the
24    questionnaires, as I indicated, we will collect them and
25    endeavor to get them to you as soon as we can, with the hope

1   that we can reconvene at 2:30 this afternoon to go through the
2   questionnaires and hopefully reach consensus as to jurors who
3   should be excused based on the responses to the questionnaire.
4   So we'll keep you apprised of our progress in collecting the
5   questionnaires.  We'll get them to you as soon as we can, and
6   then you'll have to keep us apprised on when you're prepared,
7   when you've completed your review of the questionnaires such
8   that we can meet to go through them and discuss them.
9            Any questions about any of that?
10           MR. SCHAEFFER:  No.  Thank you, your Honor.
11           MR. GREGORY:  No.  Thanks.
12           THE COURT:  All right.  So we'll just wait until we
13  hear from the jury clerk and then we'll all proceed over as
14  soon as they tell us they're ready.  Thank you.
15           ALL COUNSEL:  Thank you.
16           THE DEPUTY CLERK:  All rise.
17           (Recess)