LB4sADA1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        20 Cr. 494 (PGG)

ROBERT ADAMS,

            Defendant.                Jury Trial
------------------------------x

                                      New York, N.Y.
                                      November 4, 2021
                                      12:45 p.m.


Before:

            HON. PAUL G. GARDEPHE,

                                      District Judge


                          APPEARANCES

A. DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  JARROD L. SCHAEFFER, ESQ.
     RUSHMI BHASKARAN, ESQ.
     NICOLAS T. ROOS, ESQ.
     Assistant United States Attorneys

SAMUEL GREGORY, ESQ.
     Attorney for Defendant

TAYLOR & COHEN LLP
     Attorneys for Defendant
BY:  ZACHARY S. TAYLOR, ESQ.

ALSO PRESENT:  NICHOLAS TALIERCIO, ESQ.
```

1         (Trial resumed; jury not present)

2         THE COURT:  All right.  I received a note from the
3   jury which I'm marking as Court Exhibit 2.  The note reads as
4   follows:

5         1.  Copy of Boyce testimony.

6         2.  Copy of Harris' testimony from the time seven
7   five, when Harris and Boyce were in the visiting room and Adams
8   came in, to the time Harris and Adams went to the hotel.

9         3.  Testimony of all mentioned what Adams did with the
10  drugs after he found the drugs.

11        4.  Was there a second court officer in the search
12  room when Outlaw was caught with the drugs?

13        5.  Is there Harris testimony admitting she brought in
14  drugs after July 5?

15        Anyone want me to read those five items again?

16        MR. SCHAEFFER:  No, your Honor.

17        MR. GREGORY:  No.

18        THE COURT:  The note is dated with today's date and
19  signed by the foreperson.

20        So a number of these, I think, are very
21  straightforward.  I would like discussion with how we are going
22  to respond to a couple of them.

23        So the copy of Boyce testimony, that's very
24  straightforward.  I don't know if there was any colloquy during
25  her testimony, but that's just a matter of pulling her direct

1    and cross.
2            Then we have copy of Harris' testimony from the time
3    seven five, when Harris and Boyce were in the visiting room and
4    Adams came in, to the time Harris and Adams went to the hotel.
5    So presumably the parties can reach agreement as to the
6    relevant pages for that.  Again, we would need to look at both
7    the direct and cross.
8            Three is testimony of all mentioned what Adams did
9    with the drugs after he found the drugs.  So it seems to me you
10   should be able to reach agreement on that testimony.
11           Fourth is:  Was there a second court officer in the
12   search room when Outlaw was caught with the drugs?
13           Is there any testimony that bears on that question?
14           MR. GREGORY:  I don't think there is, your Honor.  I
15   don't think there is any testimony that bears on that.  I could
16   be wrong.  We know that Jean said there should always be two,
17   but nobody with respect to that particular moment.
18           THE COURT:  What does the government say?
19           MR. SCHAEFFER:  That's right, your Honor.  There is
20   testimony about what shouldn't have happened or typically
21   happened, but no testimony about another office being there.
22           THE COURT:  OK.  So when I bring them out, I'll tell
23   them that we have no testimony responsive to question four.
24           Then, finally, question five:  Is there Harris
25   testimony admitting she brought in drugs after July 5?

1    Well, there is clearly testimony that she brought in
2    drugs on August 14, right?  What about the period between
3    July 5 and August 14?
4             MS. BHASKARAN:  I believe so, your Honor.  I believe
5    she said she brought drugs at least once before August 14.
6             THE COURT:  OK.  All right.  So the parties will
7    prepare the testimony or find the testimony, both direct and
8    cross, as to number five as well.
9             All right.  Let's try to pull this stuff together as
10   fast as you can.  When you have it together, I'll bring them
11   out, and I'll tell them we're going to send that testimony in,
12   and that with respect to question four, there is no testimony
13   that's responsive to that request.
14            OK?
15            MR. ROOS:  Your Honor, on the second question, from
16   the note, is it clear whether they are asking up to the time
17   they went to the hotel or through the period at the hotel?
18            THE COURT:  I read it as up to.  But let me read it
19   again to you.
20            Copy of Harris' testimony from the time seven five,
21   when Harris and Boyce were in the visiting room and Adams came
22   in, to the time Harris and Adams went to the hotel.
23            The way I read it is up to the time they went to the
24   hotel.  So how would I respond to it?
25            I would say up to the point that they drove away from

1  the pizzeria, right?  Because that's when they were actually
2  driving to the hotel.  That's what would make sense to me.
3             Let's see if we can reach agreement on the pages, and
4  if you can't, you know, obviously, I'll resolve it.  But that's
5  the way I would interpret it.
6             All right.  So let me know when you have the relevant
7  pages together.  And when you do, I'll tell them we're going to
8  send the testimony in, and I will tell them that, as to
9  question four, there is no responsive testimony.
10            Now, Mike, did they get their lunch at 12:30?
11            THE DEPUTY CLERK:  I assume so.  I haven't been down
12  there.  I'll double-check.
13            THE COURT:  They are eating now anyway, but I would
14  like to get the testimony back to them as soon as we possibly
15  can.
16            All right.  Thank you.
17            (Recess pending verdict)
18            (Jury not present)
19            THE COURT:  I have received a second note from the
20  jury.  I'll mark it as Court Exhibit 3.  It reads as follows:
21            Please provide us with an update of the documents
22  requested.  Would you be able to send us any documents that are
23  ready for us to review?  Can we have bottled water?  Thanks.
24            Signed by the foreperson, dated today, 2:20.
25            All right.  So where are we on collecting the

1  documents?

2   MS. BHASKARAN:  Your Honor, we have two, I think, two
3  disputes on some relevant pages that I think your Honor can
4  address pretty quickly.  In the meantime, we're getting the
5  pages prepared.  Once your Honor decides, we should be able to
6  get those pages back to the jury quite quickly.

7   So the first dispute relates to question two, with
8  respect to the jury's questions about Harris' testimony.  The
9  dispute is whether the testimony should include the car ride up
10 until the point where they get to the motel.

11   It is the government's view that that -- that they
12 were still on their way to the motel, they hadn't yet gotten to
13 the motel, so those pages would be responsive to the jury's
14 question.  If the jury was only thinking about what happened in
15 the visit room, then they could have cut it off right there, or
16 said up in the point to the pizzeria.

17   So the government's view is that testimony with
18 respect to the car ride is responsive to the question.

19   Defense counsel's view is that those pages should not
20 be included.

21   That's the first dispute.  Would you like to hear from
22 defense counsel, or should we tee up the second one?

23   THE COURT:  Mr. Gregory?

24   MR. GREGORY:  Judge, I just think, to read the note
25 precisely and answer precisely, they would have said to the

time they arrived at the motel rather than went to the motel. My position is it's up until she got in the car.

THE COURT:  Up until what?

MR. GREGORY:  Shahada Harris got into the vehicle.

THE COURT:  Right.

As I indicated earlier, the way I read the note is up to the time they departed for the hotel. So I agree with defense counsel that the termination point with respect to question number two should be the time at which they left for the hotel.

I tend to agree with Mr. Gregory. When she got in the car and they were on the way to the hotel, I think we're beyond the point of what is responsive for the request.

What's the second dispute?

MR. SCHAEFFER:  The second dispute is with respect to question three.

The parties are in agreement on what should go back, except for one section which references several lines of testimony from Stanley Jean, which refers to things that he was not told by Robert Adams on that date.

The government's position is that when the jury asked for what Robert Adams did with the drugs, because this case necessarily turns on the government proving a negative, we should include those 20 lines of testimony about, did Robert Adams tell you this, did he tell you this, did he tell you this

1   on July 5, because that is the flip side of what he actually
2   did, which is the remaining testimony that we've agreed to
3   provide.
4            THE COURT:  I'm sorry.  What does Correction Officer
5   Jean's testimony have to do with what Adams did with the drugs
6   after he found them?
7            MR. SCHAEFFER:  The testimony I'm referring to is on
8   page 124, lines 1 to 20, which is where I inquired from
9   Mr. Jean, while he was on duty on that day on July 5, was he
10  informed by Mr. Adams whether it had been found, was a chain of
11  custody filled out, etc.
12           THE COURT:  Mike, do I have a transcript or not?
13           MR. SCHAEFFER:  I'm happy to hand you one of the
14  binders you have, if that's helpful.
15           THE COURT:  I'm sorry.  I couldn't hear you.
16           MR. SCHAEFFER:  I'm sorry.  I'm happy to hand you one
17  of the binders we have, if that's helpful.
18           THE COURT:  Just so we're clear, what lines do you
19  contend are relevant?
20           MR. SCHAEFFER:  Page 124, lines 1 to 20.
21           THE COURT:  OK.  Go ahead, Mr. Gregory.
22           MR. GREGORY:  Judge, there is only one passage that's
23  really responsive to this question, and that's when Shahada
24  Harris is asked, I believe it was on direct, what did Adams do
25  with the drugs?  He told me he threw it away.

1    That was, I think, on page 195, if I'm not mistaken,
2    and that was the only passage that dealt with what he did with
3    the drugs.
4              (Counsel confer)
5              And Boyce.  I'm sorry, Judge.  And Boyce had some
6    testimony that we agreed to.  But this testimony is about what
7    he did not do with the drugs, not what he did with the drugs.
8    A responsive answer would be to that question what he did with
9    the drugs.
10             THE COURT:  All right.  With respect to the testimony
11   that the government has cited on page 124, lines 1 through 20,
12   I find most of it nonresponsive, but I do find one question and
13   answer responsive, and it's the question at line 10.
14   "Q.  Are you aware of any contraband turned over by Mr. Adams
15   during that shift?
16   "A.  No."
17             I do believe, given that the jury has sought all
18   mention of what Adams did with the drugs, that this question
19   and answer is relevant because it answers the question of
20   whether he turned over the drugs after he discovered them.
21   That would be lines 10 through 12 on page 124.
22             All right.  So can I tell the jury that we're going to
23   send back a response to one through five on Court Exhibit 2
24   very quickly?
25             MR. SCHAEFFER:  Yes, your Honor.

1        THE COURT:  And then with respect to the note they
2   just sent out, I'll tell them that we're sending the documents
3   in immediately after.
4        And with respect to their request for bottled water,
5   unfortunately, the cafeteria is closed.  I have no way of
6   getting bottled water, so the answer to that would be no.
7        (Pause)
8        MS. BHASKARAN:  Judge, one quick question.
9        The parties were just going to give a set of testimony
10  responsive to all of the questions, unless your Honor wanted us
11  to break it out by question.
12       THE COURT:  No.  I think it can all go in one lump.
13       MS. BHASKARAN:  One copy or 12?
14       THE COURT:  I was just going to suggest one.  I've
15  never made 12 copies.
16       MS. BHASKARAN:  OK.
17       (Pause)
18       MR. SCHAEFFER:  As a quick update, your Honor, our
19  paralegal is printing it now and said she's on her way up.
20       THE COURT:  Thank you.
21       (Jury present)
22       Ladies and gentlemen, I have your first note you sent
23  out today, which I've marked as Court Exhibit 2.  It reads as
24  follows:
25       1.  Copy of Boyce testimony.

                2.  The copy of Harris' testimony from the time seven

five, when Harris and Boyce were in the visiting room and Adams

came in, to the time Harris and Adams went to the hotel.

                3.  Testimony of all mention what Adams did with the

drugs after he found the drugs.

                4.  Was there a second court officer in the search

room when Outlaw was caught with the drugs?

                5.  Is there Harris testimony admitting she brought in

drugs after July 5?

         The note is dated today, signed by foreperson.

         There was a second note, Court Exhibit 3, which reads

as follows:

         Please provide us with an update of the documents

requested.  Would you be able to send us any documents that are

ready for us to review?  Can we have bottled water?  Thanks.

         Signed by the foreperson, dated today, and with a time

of 2:20.

         Let me start with the water.  Unfortunately, the

answer is no, because the cafeteria is closed, sadly.  It

closes soon after the lunch hour.  So I, unfortunately, don't

have access to any bottled water for you.

         We do have all the testimony ready.  I will tell you

that there was only responsive testimony for questions one,

two, three, and five.  There is no responsive testimony as to

question four.

1     I'll just remind you what question four was.  Was
2  there a second court officer in the search room when Outlaw was
3  caught with the drugs?  There is no responsive testimony on
4  that point.
5     There is testimony relevant to all your other
6  questions, and the lawyers have prepared that for you and will
7  be sending it into the jury room soon after you return there.
8     So please continue your deliberations.  Thank you all
9  very much.
10     (Jury not present)
11     All right.  Your paralegal is on the way over here?
12     MR. SCHAEFFER:  She actually has a quick question,
13  your Honor.  If Ms. Bhaskaran would be able to run down just to
14  confer with her before she finishes printing, we should have it
15  back up in a few minutes.
16     THE COURT:  All right.  Anyway, once she arrives,
17  you'll make sure the lawyers, defense lawyers, agree with what
18  should go in.  And then, please, they are obviously impatient
19  with the time we've taken to find the testimony, so please
20  let's get it to them as soon as we can.
21     MR. SCHAEFFER:  We apologize for the delay, your
22  Honor.
23     MR. GREGORY:  Judge, just one thing.  There is a bunch
24  of water, or many bottles of water, in the attorney lounge, if
25  you want us to grab some of those.

1           THE COURT:  That's a good idea.  Sure.
2           MR. GREGORY:  We will grab them and put them in the
3    courtroom.
4           THE COURT:  Yes.  Mr. Ruocco can give them to the
5    marshal.  I'm sure they would appreciate that.
6           Good idea, Mr. Gregory.  Thank you.
7           (Recess pending verdict)
8           (Jury not present)
9           THE COURT:  All right.  We're at five past five, so
10   we're going to bring the jury up and send them home for the
11   evening.
12          (Jury present)
13          Ladies and gentlemen, we have reached the five o'clock
14   hour.  As is our custom, I'll be sending you home for the
15   evening.
16          As always, please don't discuss the case with anybody.
17   I'm going to ask you to return at 9:30 tomorrow morning to
18   continue your deliberations.  And, please, don't begin your
19   deliberations until all 12 of you are present.
20          So have a pleasant evening, and I ask you to return at
21   9:30 tomorrow morning to continue your deliberations.
22          Thank you all very much.
23          (Jury not present)
24          All right.  We'll await their next note.  Thank you
25   all very much.

            (Adjourned to Friday, November 5, 2021, at 9:30 a.m.)